Stella CALLOWAY, Appellant,

v.

DISTRICT OF COLUMBIA HOUSING
AUTHORITY, Appellee.

No. 05–CV–330.

District of Columbia Court of Appeals.

Argued Dec. 6, 2006.
Decided Dec. 8, 2006.*

* The decision in this case was originally re-
leased as a Memorandum Opinion and Judg-
ment on December 8, 2006. It is now being
published upon motion by appellee.

Dorene M. Haney, Washington, DC, with whom Evert J. Christensen, Jr., Lorien S. Buehler, and Ann Marie Hay, were on the brief, for appellee.

Frederick A. Douglas, with whom Monica E. Monroe, Robert L. Dillard, and Margaret McFarland, Washington, DC, were on the brief, for appellee.

Before FARRELL, KRAMER, and FISHER, Associate Judges.

PER CURIAM:

Appellee District of Columbia Housing Authority (DCHA) brought this action for possession against appellant Stella Calloway based upon a claim that she had violated, *inter alia,* paragraph 5(m) of her lease addendum which required her, as the tenant on the lease, "[t]o refrain from ... [a]ny criminal ... activity which threatens the health or safety of other residents ... or [from] ... [a]ny drug-related criminal activity [on] ... DCHA property." At trial, evidence established that a police search of the five-bedroom, federally subsidized building leased to Calloway by DCHA had yielded a loaded handgun, ammunition, a vial of PCP, drug paraphernalia (*i.e.,* empty zip-lock bags), and $1080 from two upstairs bedrooms, and another loaded handgun and additional ammunition from a first-floor bedroom. Instructed, *inter alia,* on constructive possession, a jury found that Calloway had violated her lease and awarded possession to DCHA.

■ On appeal, Calloway argues principally that the District's statutes and regulations governing eviction required DCHA to issue a notice to correct or vacate—in effect, to give her an opportunity to cure the lease violation—before moving to evict her. In this context of federally subsidized housing, we have rejected that argument. *See Scarborough v. Winn Residential, L.L.P.,* 890 A.2d 249 (D.C.2006).[1]

Calloway would distinguish *Scarborough* on the ground that her lease, unlike the lease in that case, did not incorporate the precise, no-fault language from federal regulations permitting eviction of a public housing tenant for dangerous criminal activity by a "tenant, member of the tenant's household, or guest ... [or] other person under the tenant's control." 24 C.F.R. § 966.4(f)(12) (2006). We fail to see how that omission from her lease restores a statutory right to cure that *Scarborough* held "would stand as a pronounced obstacle to the exercise of" "the federal government's authority ... to prevent crime in federally-assisted housing" by stern eviction measures. *Id.* at 257. Unmistakably, Calloway's lease addendum incorporated the federally required provision allowing eviction for criminal activity and for drug activity in particular. Nothing in the lease gave Calloway a right "not to engage in [criminal] activity *again,*" *id.* (emphasis added), before eviction could be sought, and *Scarborough* makes clear that her reliance on District statutes or regulations for that perceived right in this context of federally subsidized housing is unavailing.

■ At oral argument Calloway asserted, essentially for the first time, that because paragraph 5(m) of her lease also permitted her eviction for "other activity"—not just criminal and drug activity—that threatened the safety of others, her right to cure has not been supplanted by the federal regime cited in *Scarborough,* which related only to activities criminal in nature. Whatever force that argument might have in another case, however, it has none here, where the only factual basis on which DCHA sought Calloway's eviction was the drugs, drug paraphernalia, and firearms and ammunition found in her dwelling.

---

1. *Scarborough* was decided after Calloway filed her opening brief.

Calloway further argues that the notice to vacate served on her by DCHA was "impermissibly vague" (Br. for App. at 29). It was not. As in *Scarborough,* the notice "contained a statement detailing the reasons for the eviction, including the factual basis on which [DCHA] relied," and "specified the grounds for termination." *Scarborough,* 890 A.2d at 252 n. 2 (internal quotation marks, brackets and citations omitted). It was fully sufficient to enable her to prepare a defense to the claimed violations.

Finally, Calloway argues that the evidence was insufficient to prove that she violated paragraph 5(m) of the lease. She is correct that, contrary to the command of federal law, *see Department of Hous. & Urban Dev. v. Rucker,* 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002), the terms of paragraph 5(m) made her liable only for her own criminal activity on the premises-not for the activity of a guest or invitee.[2] We assume, therefore, without strictly deciding, that she could be evicted under paragraph 5(m) only for criminal activity for which she was personally responsible—not for the activity of Maurice Calloway, her son, who was present in the house at the time in close proximity to some of the contraband. Even so, the jury was instructed on constructive possession, and the evidence was sufficient in this civil case—with its proof requirement only of preponderance of the evidence—to permit a conclusion that Calloway had constructively possessed the weapons, ammunition, PCP, and drug paraphernalia found at three separate locations in the property leased to her. *See generally Rivas v. United States,* 783 A.2d 125 (D.C.2001) (en banc); *see id.* at 133 (noting difference in proof requirements, as to constructive possession, between criminal case and one involving "less stringent standards of proof"). The jury's finding, reflected separately in the verdict form, that Calloway had violated paragraph 5(m) of the lease is, accordingly, supported by the record.[3]

*Affirmed.*

2. By a pretrial order, a Superior Court judge had read the paragraph that way and limited DCHA to proving personal liability by Calloway for violation of paragraph 5(m); DCHA took no cross-appeal from that ruling. To the extent Calloway now argues that jury instructions given by the judge, and closing argument by DCHA, allowed the jury nonetheless to find her liable under paragraph 5(m) for someone else's conduct that she had not facilitated and of which she had no knowledge, she made no objection to the instructions or closing argument on that ground. Indeed, her briefs on appeal make no challenge to the trial court's instructions as such.

3. In view of this analysis, including the separate verdicts returned by the jury, we need not consider issues related to the jury's finding that Calloway had also violated paragraph 5 (*l*) of the lease. Further, any prejudice she suffered from the admission in evidence of the transcript of Maurice Calloway's guilty plea was, we conclude, negligible and certainly not enough to warrant reversal.