**Angela PRATT, Appellant**

v.

**DISTRICT OF COLUMBIA HOUSING AUTHORITY, Appellee.**

**No. 05–CV–559.**

District of Columbia Court of Appeals.

Argued Jan. 29, 2008.

Decided Feb. 21, 2008.

---

Nathan A. Neal, Supervising Attorney, D.C. Law Students In Court Program, with whom Ann Marie Hay, Executive Director, D.C. Law Students In Court Program, and Gretchen Bundy, Aaron McParlan, and Monica O'Connell, Law Students, were on the brief, for appellant.

Frederick A. Douglas, Washington, DC, with whom Hans Froelicher, IV, Acting General Counsel, District of Columbia Housing Authority, and Nicole C. Mason, were on the brief, for appellee.

Before FARRELL, GLICKMAN, and FISHER, Associate Judges.

FARRELL, Associate Judge:

In two recent decisions upholding evictions from federally-subsidized housing accommodations, *Scarborough v. Winn Residential L.L.P./Atlantic Terrace Apartments*, 890 A.2d 249 (D.C.2006), and *Calloway v. District of Columbia Hous. Auth.*, 916 A.2d 888 (D.C.2006), this court held that the statutory federal "one-strike" policy embedded in lease provisions permitting eviction for criminal activity displaces—when applied to such activity—a District of Columbia statute generally allowing tenants an opportunity to correct or "cure" lease violations and thereby avoid eviction. *See* D.C.Code § 42–3505.01(b) (2000).[1] The main issue this case presents is whether that federal policy is self-executing, *i.e.*, whether it displaces operation of the local cure statute where criminal activity is alleged (and shown) but where eviction is sought based only on a lease provision that does not incorporate the prohibition against criminal activity. We answer that ques-

---

1. These decisions, *Scarborough* in particular, left open whether the cure statute by its own terms or intent does not extend to lease viola-

tions criminal in nature. *See* 890 A.2d at 254–55. This case requires us to answer that question. See part III, *infra*.

tion "no": the federal policy is effectuated through a specific lease provision and resultant contractual liability of the tenant, and because the lease paragraph appellant was charged with violating contained no specific reference to criminal activity, federal law does not preclude the cure opportunity afforded her by District law. Moreover, because D.C.Code § 42–3505.01(b) does not itself withhold its protection from lease violations criminal in nature, the District as landlord must serve appellant with a proper notice to correct or vacate before it may pursue eviction for the violation alleged.

## I.

Appellant is a tenant in the Benning Terrace apartment complex in Southeast Washington, D.C., a federally (HUD)-subsidized property owned and operated by the District of Columbia Housing Authority (DCHA or the Authority). At the relevant time, appellant's lease agreement listed Davon Pratt, her son, as a household member. Paragraph 5 (*l*) of the lease required appellant

> [t]o conduct ... herself and cause other persons who are on the premises with ... her consent to conduct themselves in a manner that will not disturb ... her neighbor[s'] peaceful enjoyment of their accommodations and will be conducive to maintaining the project in a decent, safe and sanitary condition.

Paragraph 14(c)(iii), in turn, authorized DCHA to terminate appellant's lease "[f]or serious or repeated violations" of named lease provisions, including paragraph 5 (*l*). Although this language is broad enough to encompass the criminal activity at issue here, it does not, as will be apparent, embody the specific obligations of tenancy that we relied upon in *Scarborough* and *Calloway, supra.*

In April 2002, a police officer saw Davon Pratt driving a stolen automobile on F Street near Benning Road, S.E., and subsequently found the car parked, unoccupied, in an alley off G Street within the Benning Terrace housing complex. Davon's identification was in the back seat of the car. On February 25, 2003, DCHA served appellant with a Notice to Vacate charging that she or a family member had "violat[ed] the terms and conditions of [her] lease and tenancy," and requiring her to vacate the premises within thirty days, with "no right to cure." Specifically, besides alleging violation of paragraph 5 (*l*) (by "act[ing] in a manner which disturbs other residents' peaceful enjoyment of their accommodations and ... is not conducive to maintaining the housing development in a ... safe ... condition"), the Notice alleged a violation of paragraph 5(m), which required appellant "[t]o refrain from illegal or other activity which impairs the physical or social environment of the project." An addendum to the Notice described the police officer's observations of Davon driving (and abandoning) the stolen car as "the criminal activity resulting in this action."

When appellant failed to vacate as required, DCHA sued for possession of the rental unit in Superior Court. Before trial, the judge struck the alleged violation of paragraph 5(m) from the complaint because, while it prohibited "illegal activity," it did not impose responsibility on appellant to "cause other persons" to refrain from that activity, and the illegal activity alleged was ascribed only to her son, not herself. DCHA ultimately did not object to this deletion, and has not challenged it by cross-appeal. On the other hand, the judge rejected appellant's request to dismiss the suit because she had not been given an opportunity to correct (or cure) the violation of paragraph 5 (*l*), as required—she maintained—by D.C.Code

§ 42–3505.01(b). The complaint thus was submitted to the jury as alleging a paragraph 5 (*l*) violation only.

DCHA presented testimony about the prevalence of auto theft and abandonment in and around the Benning Terrace complex and the hazard to residents from young people driving stolen cars through the complex at high speeds. At the close of trial, the judge instructed the jury (as relevant here) that, to support eviction, DCHA had to prove that Davon Pratt had "committed [the] crime of unauthorized use of a motor vehicle" (UUV) and that this criminal activity had disturbed the safety or peaceful enjoyment of the premises of other residents, as set forth in paragraph 5 (*l*).[2] The jury found both facts and awarded possession to DCHA.

## II.

■ Appellant's primary argument to us is that the trial judge erred in ruling that she was entitled only to a proper "notice to vacate" rather than a "notice to correct or vacate" before DCHA could sue to evict her for violation of lease paragraph 5 (*l*). DCHA responds that, under our decisions in *Scarborough* and *Calloway, supra,* appellant was not entitled to an opportunity to cure because the basis for her eviction, both as stated in the Notice to Vacate and as proved to the jury's satisfaction, was her responsibility for criminal activity by Davon Pratt, her son and a member of her household. Appellant rejoins that *Scarborough* and *Calloway* each, in holding the statutory cure provision pre-empted (or superseded) by the federal one-strike poli-cy, rested decision on the inclusion in the tenant's lease of a provision expressly permitting eviction for criminal activity that threatens the safety or peaceful occupancy of other residents—something absent from paragraph 5 (*l*). We are obliged to agree with appellant.

*Scarborough* began its analysis by recognizing that, "[w]hen applicable, compliance with [§ 42–3505.01(b) ] is necessary before a landlord may institute eviction proceedings." 890 A.2d at 253 (citation omitted).[3] But, because the challenged eviction there was from federally-subsidized housing, it implicated "the federal government's authority 'as a landlord of property that it owns,' " *id.* at 257, and so the court had to examine the interplay between the cure statute and Congress's determination "to prevent crime in federally-assisted housing by permitting the eviction of tenants when they or persons they have allowed access to their premises commit crimes threatening the health or safety of other residents." *Id.* We concluded in *Scarborough* that "[a]pplying the cure provision of . . . § 42–3505.01(b)" in this setting "would stand as a pronounced obstacle to" implementing the "One–Strike Policy" contained in federal law, which requires "stern eviction measures" for tenants who commit or allow criminal activity. *Calloway,* 916 A.2d at 889 (in part quoting *Scarborough,* 890 A.2d at 257).

Central to the analysis in both cases, however, was the manner by which federal law carries out this policy. Thus, we explained that among the conditions imposed by federal "housing assistance programs

---

**2.** The judge had concluded, as a matter of law, that commission of UUV would amount to a "serious" violation of paragraph 5 (*l*) and so justify eviction under paragraph 14(c)(iii).

**3.** Section 42–3505.01(b) provides that "[a] housing provider may recover possession of a rental unit where the tenant is violating an obligation of tenancy and fails to correct the violation within 30 days after receiving from the housing provider a notice to correct the violation or vacate." DCHA does not dispute here that the statute applies generally to tenants of publicly-assisted housing.

... are that specific provisions must appear in the written lease agreements with individual tenants." *Scarborough*, 890 A.2d at 255. We cited, as an instance of this command, 42 U.S.C. § 1437d (*l*)(6), requiring "[e]ach public housing agency [to] utilize leases which ... provide that any criminal activity that threatens the ... safety ... or right to peaceful enjoyment of the premises by other tenants ... engaged in by a ... tenant ... or other person under the tenant's control ... shall be cause for termination of tenancy." We also cited implementing regulations that operate in similar fashion. Title 24 C.F.R. § 966.4, for example, entitled "Lease requirements" for public housing, declares in section (*l*) that a public housing agency "may terminate the tenancy ... for ... criminal activity as provided in paragraph ... (5) of this section"; and that paragraph, in turn, requires "[t]he lease" to "provide that any criminal activity by a covered person that threatens the ... safety ... or right to peaceful [occupancy] ... of other residents ... is grounds for termination of tenancy." In this and parallel regulations, the federal policy is thus implemented by requiring inclusion of specific anti-crime clauses in lease agreements.

Further confirming this understanding is HUD's summary of the law governing tenant liability for conduct of family members such as Davon Pratt, as follows:

> As in a conventional tenancy, a public housing tenant holds tenure of the unit subject to the requirements *of the lease,* including obligations concerning the conduct of household members affecting ... the welfare of other residents. By signing the lease, a tenant agrees to comply with leasehold requirements pertaining to the behavior of family members.... In terminating tenancy [for crime committed by a family member], the [public housing authority] *enforces the tenant's contractual duty, expressed in the lease,* to prevent such activity by any family member.

Public Housing Lease and Grievance Procedures, 56 Fed.Reg. 51,560, 51,566–67 (Oct. 11, 1991) (emphasis added).

*Scarborough* and *Calloway* both, in enforcing this regulatory scheme, based their holdings on the fact that the tenant's lease incorporated the express prohibition of criminal activity, as Congress had required. *See* 890 A.2d at 252 & n. 1; 916 A.2d at 889. *See also Department of Hous. & Urban Dev. v. Rucker,* 535 U.S. 125, 128, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002) (noting that "respondents' leases[ ] track[ed] the language of § 1437d (*l*)(6)" in upholding eviction based on criminal conduct of household members or guests without tenant's knowledge); *Burton v. Tampa Hous. Auth.,* 271 F.3d 1274, 1276 & n. 4 (11th Cir.2001) (same); *Boston Hous. Auth. v. Garcia,* 449 Mass. 727, 871 N.E.2d 1073, 1078 & n. 12 (2007) (holding that federal policy permitting no fault eviction, as implemented in lease, preempted state law permitting judicial determination that actions of other household members did not constitute "cause" to evict). *Calloway* underscored the centrality of this lease provision in rejecting the tenant's argument that *Scarborough* did not apply because her lease, "unlike the lease in that case, did not incorporate the precise, no-fault language from federal regulations permitting eviction ... for dangerous criminal activity by a 'tenant, member of the tenant's household, or ... other person under the tenant's control.'" We said that "[w]e fail to see how that omission from her lease restores a statutory right to cure," when, "[u]nmistakably, Calloway's lease addendum incorporated the federally required provision allowing eviction for criminal activity...." *Id.* (citation omitted).

Unlike in either of those two cases, paragraph 5 (*l*) of appellant's lease, the sole ground on which her eviction was sought before the jury, was silent as to the prohibition of criminal activity. Thus, evicting her for Davon Pratt's criminal activity without first giving her an opportunity to cure cannot be said to "enforce[her] contractual duty, expressed in the lease, to prevent such activity by any family member." Public Housing Lease and Grievance Procedures, 56 Fed.Reg. at 51,567. The pre-emption of local law worked by a lease provision embodying the federal one-strike policy does not, we conclude, displace a tenant's right to an opportunity to cure violation of a lease paragraph which does not specifically mention criminal activity. It is doubtless true, as DCHA implied at oral argument, that appellant's lease "fell through the cracks" of the Authority's endeavor to amend all public housing leases to conform to the federal command,[4] but that does not justify denying her the protection which § 42–3505.01(b) affords generally to tenants in the District charged with violating an obligation of tenancy.

### III.

■ Because of this holding, we must decide the additional question left unresolved by *Scarborough,* namely of whether § 42–3505.01(b) by its own terms—without regard to supercession by federal law—applies only "to traditional lease violations of the nuisance variety ... that can be abated or "cured" but that do not rise to the seriousness of criminal activity threatening the safety of other tenants." 890 A.2d at 254. In the present case, tried before *Scarborough* was decided, it was

the trial judge's affirmative answer to that question which caused him to reject appellant's claim of entitlement to an opportunity to cure.

We hold that § 42–3505.01(b) reflects no distinction between obligations of tenancy criminal in nature and others; unless limited otherwise by the D.C.Code (or by federal law in the manner described above), it guarantees an opportunity to correct all such lease violations. The plain terms of the section, of course, make no distinction between criminal and other violations. *See generally J. Parreco & Son v. District of Columbia Rental Hous. Comm'n,* 567 A.2d 43, 45 (D.C.1989) (citing "maxim that we must look first to [a statute's] language; if the words are clear and unambiguous, we must give effect to its plain meaning"). Moreover, as we explained in *Scarborough* (though having no occasion to decide the issue):

> [W]hen the [D.C.] Council elsewhere meant to dispense with the opportunity to cure as a condition of lease termination—and with criminal behavior in mind—it did so unambiguously. The very next subsection of § 42–3505.01 allows a landlord to evict, merely by "serv[ice] on the tenant [of] a 30–day notice to vacate," where "a court of competent jurisdiction has determined that the tenant, or a person occupying the premises with or in addition to the tenant, has performed an illegal act within the rental unit"[, § 42–3505.01(c), provided that "the tenant knew or should have known that an illegal act was taking place." *Id.* Th]ere the absence of a cure opportunity for (adjudicated) unlawful acts is explicit. In the same way, D.C.Code § 42–3602 permits a landlord

---

**4.** Indeed, a lease addendum to the *previous* lease for the unit between appellant's mother and DCHA incorporated the prohibition of criminal activity that threatens the peaceful occupancy of others, but, as DCHA acknowledges, that addendum does not govern appellant's tenancy, and no similar addendum to her lease was offered into evidence.

to evict, "*notwithstanding* any provision of ... § 42–3505.01" (emphasis added), where a court has found a rental unit to be a statutorily-defined "drug haven." These provisions, insofar as they permit eviction without an opportunity to correct, would ... be unnecessary if the general cure provision of § 42–3505.01(b) does not extend to lease violations criminal in nature.

890 A.2d at 254–55.[5] The cited provisions demonstrate that in some, *but not all,* circumstances the D.C. Council has deemed criminal or illicit activity incompatible with an opportunity to cure a lease violation. Neither § 42–3505.01(b) by its terms, nor related D.C. statutes, justify denying appellant the opportunity to avoid eviction by timely measures—such as exclusion of Davon Pratt from her household—to prevent recurrence of the criminal activity her son engaged in. And, as we have explained, DCHA did not here rely on lease provisions specific enough to effectuate the federal one-strike policy. Thus, unlike in *Scarborough* and *Calloway,* the statutory right to cure has not been displaced by a provision of the lease.

## IV.

■ Accordingly, we vacate the judgment of possession and order dismissal of the complaint for failure to afford appellant the notice required by the local statute. Should DCHA still wish to evict appellant for the same April 2002 activity, it must first provide her with a notice in accordance with § 42–3505.01(b).[6]

*Reversed and remanded.*

---

5. In this case, as in *Scarborough*, "[t]he landlord did not pursue eviction ... under § 42–3505.01(c), presumably because there had been no prior court determination that illicit activity took place within the apartment [or housing accommodation]," 890 A.2d at 254 n. 4; moreover, DCHA did not allege that appellant "knew or should have known that an illegal act [*i.e.,* Davon's actions in committing UUV] was taking place." Section 42–3505.01(c).

6. We reject appellant's argument that the Notice to Vacate DCHA served on her was untimely because the notice was issued more than six months after the date of the alleged violation. *See* 14 DCMR § 4301.4 (1991). Regulations beginning with 14 DCMR § 6000 expressly govern "the operation of low rent housing in the District of Columbia," § 6000.1; *see also* D.C.Code § 6–203(12) (authorizing DCHA to "[a]dopt and implement administrative procedures"). Section 6404 governs eviction of public housing tenants by DCHA and provides for issuance of a "notice to correct or vacate" where DCHA has determined that a tenant is violating her lease. Section 6404.2, *amended by* 49 D.C.Reg. 2461, 2467 (2002). Nothing in this section or in § 6099.1, defining the Notice to Correct or Vacate that "shall serve as the notice required for eviction by District law," imposes a time limit after which a notice to correct or vacate is unenforceable as stale. Because laws general in nature ordinarily yield to more specific ones covering the same subject, *see, e.g., Edmond v. United States,* 520 U.S. 651, 657, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997), the notice provisions governing public housing provide the relevant standard here.