*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0112

DESEAN HATTIX, APPELLANT,

v.

DISTRICT OF COLUMBIA HOUSING AUTHORITY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2018-LTB-018276)

(Hon. Rahkel Bouchet, Magistrate Judge)
(Hon. Todd E. Edelman, Reviewing Judge)

(Argued February 23, 2023     Decided May 1, 2025)

*Betsy A. Crumb*, with whom *Luca Difronzo*, *Rowdy Kowalik*, *Lindsay Swinson*, *Jenifer E. Foster*, and *James Toliver* were on the briefs, for appellant.

*Lisa J. Dessel* for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and BECKWITH and DEAHL,[1] *Associate Judges*.

---

[1] Associate Judge AliKhan was originally assigned to this case. Following Judge AliKhan's appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Judge Deahl has been assigned to take her place on the panel.

Beckwith, *Associate Judge*: Desean Hattix was convicted of attempted failure to register a firearm after police executed a search warrant at his home and recovered, among other things, two unregistered handguns. Following his conviction, the District of Columbia Housing Authority (DCHA) sued Mr. Hattix to evict him from his federally subsidized housing unit. DCHA alleged that Mr. Hattix's possession of an unregistered firearm violated the federal "one-strike" provision in his lease, which prohibits tenants from engaging in "[c]riminal activity that threatens the residents' health, safety or right to peaceful enjoyment of the [property]." The trial court found that Mr. Hattix's unlawful possession of a firearm violated this provision and issued a nonredeemable judgment against him. On appeal, Mr. Hattix argues (1) that possession of an unregistered firearm does not constitute a per se threat to residents' health, safety, or right to peaceful enjoyment of the property, and (2) that DCHA did not present sufficient evidence that Mr. Hattix's conduct posed a threat to residents' health, safety, or right to peaceful enjoyment of the property. We agree in both respects and reverse the judgment of the Superior Court.

## I.

In January 2018, the Metropolitan Police Department (MPD) executed a search warrant at the federally subsidized housing unit where Mr. Hattix lived in

Southwest D.C. MPD officers seized several items, including "two handguns, each with ammunition, a spent round of ammunition, a plastic bag containing drug paraphernalia and mail matter in [Mr. Hattix's] name." The firearms were not registered, and Mr. Hattix was not licensed to possess a firearm in the District. Mr. Hattix was charged with two counts of possessing an unregistered firearm and two counts of possessing unregistered ammunition. D.C. Code § 7-2502.01. He subsequently pleaded guilty to attempted possession of an unregistered firearm.[2]

Following his conviction, DCHA served Mr. Hattix with a notice to vacate his home, informing him that he had violated his lease and would be evicted. Specifically, DCHA relied on provision 18.1.4(i) of the lease, which states that lessees "shall not engage in any" "[c]riminal activity that threatens the residents' health, safety or right to peaceful employment of the Development." By law, this language—also called the one-strike provision—appears in all federally subsidized housing leases in every state. 42 U.S.C. § 1437d(l)(6). It requires no notice to

---

[2] Mr. Hattix's judgment and commitment order identifies his crime as "attempted failure to register firearm." It is unclear from the record, and counsel was unable to clarify at argument, why the offense Mr. Hattix pleaded to is described differently in the judgment. The discrepancy does not affect our analysis because the record clearly establishes that there was an unregistered firearm in Mr. Hattix's home, and both parties—and the court—repeatedly described the relevant criminal activity as "attempted possession of an unregistered firearm" at the hearings and before this court.

tenants and no opportunity to cure their violation, thus preempting the general requirement under D.C. law that a landlord seeking to evict a tenant provide such notice and opportunity to cure. D.C. Code § 42-3505.01(b).

After Mr. Hattix failed to vacate his home, DCHA sued for repossession of his apartment and a bench trial was held before a magistrate judge. Mr. Hattix's signed lease, his criminal complaint, and the judgment and commitment order reflecting his guilty plea and sentence were all admitted into evidence. DCHA also presented the testimony of Rhonda Harvell, the housing manager for Mr. Hattix's building. Ms. Harvell testified that although she had never had any negative interactions with Mr. Hattix and had no knowledge that he had ever engaged in any activities involving a gun on the premises, she had received reports from tenants and property staff regarding generalized concerns about gun violence at the complex. Ms. Harvell said she shared these concerns because "guns kill," noting that years earlier, "a young child got struck with a stray bullet" during a drive-by shooting.

Mr. Hattix likewise testified to the impact of gun violence in the community, detailing one incident where he was shot in the leg and another incident in which he was nearly shot while "trying to save a child from gunfire." He also testified that although he was eligible to register a firearm at the time MPD officers found

the guns in his home, neither of the guns was registered and he pleaded guilty to attempted possession of those guns.

The magistrate judge found that Mr. Hattix unlawfully possessed a firearm in violation of the federal one-strike provision and issued a nonredeemable judgment against him. The judge found that DCHA proved (1) that Mr. Hattix had signed a lease with DCHA that contained the one-strike provision, (2) that DCHA had properly served Mr. Hattix with a notice to vacate, and (3) that possession of an unregistered firearm violated the one-strike provision because it threatened the health and safety of other residents. The magistrate judge determined that DCHA had established that Mr. Hattix's possession of an unregistered firearm threatened the safety of other residents because the "unregistered firearm was in his unit on the premises."

An associate judge of the Superior Court upheld the magistrate judge's decision, finding that Mr. Hattix's gun possession posed both a per se and an individualized threat to the health and safety of other residents. *See* Super. Ct. Civ. R. 73. As to whether the possession posed a per se threat, the reviewing court noted that the District's registration requirements were "designed to ensure firearms are not in the hands of dangerous and untrained individuals." By "ignor[ing] a law designed to ensure public safety," Mr. Hattix "place[d] the public

at risk." The court relied on this court's determination in *Scarborough v. Winn Residential LLP/Atl. Terrace Apartments*, 890 A.2d 249, 257 n.9 (D.C. 2006), that the presence of firearms and ammunition threatened the safety of other tenants and disagreed with Mr. Hattix's contention that *District of Columbia v. Heller*, 554 U.S. 570 (2008), had overruled *Scarborough*. In the reviewing judge's view, *Heller*'s conclusion that "[t]he Second Amendment says you have a right to possess this extremely dangerous thing" and that the District could not "prohibit people from having th[is] dangerous thing under certain conditions" did not "change [the gun's] character." The court therefore affirmed the magistrate judge's finding that Mr. Hattix's possession of an unregistered firearm posed a per se threat to the health and safety of other residents.

Even if Mr. Hattix's conduct did not amount to a per se threat in violation of the one-strike provision, the reviewing judge said, DCHA had established that Mr. Hattix posed an individualized threat. In the court's view, Ms. Harvell's testimony regarding the concerns of gun violence on the property—as credited by the magistrate judge—was sufficient to demonstrate that Mr. Hattix's possession of "an illegal firearm in an apartment plagued by gun violence" posed a threat to the health, safety, and right to peaceful enjoyment of other tenants.

## II.

To satisfy the federal one-strike provision and evict a tenant, a housing provider must establish that the tenant "violat[ed] an obligation of the tenancy." D.C. Code § 42-3505.01(a)-(b). Mr. Hattix argues on appeal what he asserted before both judges in the trial court: DCHA failed to establish that his possession of an unregistered firearm violated the one-strike provision's prohibition against "[c]riminal activity that threatens the residents' health, safety or right to peaceful enjoyment of the [property]" because (1) DCHA concedes that under *Heller* Mr. Hattix could not be evicted for possessing a registered handgun and (2) DCHA did not show that the registration status of his gun posed a threat to fellow residents.[3]

---

[3] Though the parties also disagree about whether Mr. Hattix violated provision 18.1.6—the provision stating that lessees may "not engage in any violent criminal activity" and may not, "except as permitted by District of Columbia Law, be in possession of any firearms or ammunition for a firearm"—we agree with the associate judge that the magistrate judge based her decision on Mr. Hattix's violation of the one-strike provision, not the separate firearm provision. In any event, the firearm provision, which is governed by D.C. law rather than federal law, requires DCHA to provide the tenant an opportunity to cure—which DCHA did not offer Mr. Hattix here. D.C. Code § 42-3505.01(b). *Compare Scarborough*, 890 A.2d at 258 (concluding that federal law preempted D.C. law with respect to the right to cure for violations of the federal one-strike provision), *with Pratt v. D.C. Hous. Auth.*, 942 A.2d 656, 661 (D.C. 2008) (holding that "§ 42–3505.01(b) reflects no distinction between obligations of tenancy criminal in nature and others; unless limited otherwise by the D.C. Code (or by federal law . . .), it guarantees an opportunity to correct all such lease violations"). This opinion therefore focuses on Mr. Hattix's alleged violation of the one-strike provision.

Like the reviewing judge, DCHA contends that this court already decided in *Scarborough* that the presence of an illegal firearm constitutes a per se threat to the health and safety of other tenants. *See* 890 A.2d at 257 n.9 ("[T]he presence of a loaded twelve-gauge semi-automatic shotgun in the apartment, together with a handgun and other ammunition, threatened the safety and peaceable enjoyment of other residents."). We review de novo the trial court's legal conclusions—including its determination that *Scarborough* controls—but we review its factual findings for clear error. *Hernandez v. Banks*, 84 A.3d 543, 556 (D.C. 2014).

*Scarborough* was decided at a time when simple possession of a firearm was generally unlawful within the District. *Scarborough*, 890 A.2d at 257. More specifically, as the Supreme Court stated in *Heller*, "it [was] a crime to carry an unregistered firearm, and the registration of handguns [was] prohibited." 554 U.S. at 574-75; *see also id.* at 693 (Breyer, J., dissenting) (stating that the District "prohibits (in most cases) the registration of a handgun within the District" and that "[b]ecause registration is a prerequisite to firearm possession, the effect of this provision is generally to prevent people in the District from possessing handguns" (citations omitted)); D.C. Code § 7-2502.01(a) (2001) (outlawing the possession of unregistered firearms); *id.* § 7-2502.02(a)(4) (2001) (prohibiting the registration of most handguns). Thus, the relevant "criminal activity" that might "threaten[] the safety and peaceable enjoyment of other residents" at issue in *Scarborough* was

gun possession, not—as is at issue here—a failure to complete the gun registration process.[4]  In other words, while *Scarborough* considered the danger posed by gun possession in violation of the District's former sweeping ban on firearms in a world without registration, here we are asked to consider the possession of an unregistered handgun *after* the Supreme Court confirmed in *Heller* that the District's law banning possession was unconstitutional.

The distinction between Dick Heller's possession of an *unregistrable* firearm—which could not be a reason to evict a tenant—and Mr. Hattix's possession of an unregistered handgun in violation of the District's post-*Heller* registration scheme is minimal, and not so glaring as to warrant the eviction of Mr. Hattix based on *Scarborough*'s holding, prior to *Heller*, that the presence of an illegal firearm is a per se threat to the safety of one's neighbors.  We do not dispute DCHA's argument that gun registration "is a useful method to curb illegal gun activity, encourage responsible gun practices and ensure gun owner accountability and help law enforcement solve crimes and disarm criminals."  The same can be said about other registration schemes.  For example, the District requires private

---

[4] Accordingly, the notice to vacate in *Scarborough* identified the violation as "having a firearm" and "maintaining a gun on the property," 890 A.2d at 252, while here, the notice described the violation as "possess[ing] unregistered weapons."

vehicle-for-hire companies to abide by registration requirements, and we have acknowledged that proper registration allows the District to ensure the company is "in fact complying with applicable safety and consumer-protection requirements." *Yazam, Inc. v. D.C. Dep't of For-Hire Vehicles*, 310 A.3d 616, 629 (D.C. 2024). But the fact that registration may serve as a "mechanism by which [the District] enforces important safety" requirements does not mean that the "mere lack of registration would . . . ordinarily be viewed as itself causing" harm. *See id.* at 628-29; *see also Heller v. District of Columbia,* 670 F.3d 1244, 1271 (D.C. Cir. 2011) (*Heller II*) (Kavanaugh, J., dissenting) (stating that "D.C.'s public safety motivation in enacting" its "broad gun registration requirement" is "worthy of great respect," but noting that the law is an "outlier[]" and a decision that it was unconstitutional would not upset "the balance historically and traditionally struck in the United States between public safety and the individual right to keep arms").

Further, the fact that "the vast majority of states have not traditionally required registration of lawfully possessed guns," *id.* at 1292 (Kavanaugh, J., dissenting)—including many states that explicitly *prohibit* registration requirements, *see* Gun Laws 50-State Survey, https://www.justia.com/constitutional-law/gun-laws-50-state-survey/; https://perma.cc/8LGC-F3JD (last visited March 19, 2025)—tends to weaken DCHA's characterization of possession of an unregistered handgun as a per se

threat to safety. To be sure, different states have different conditions and different legislative priorities, but most people in the United States who live in federally subsidized housing—including people in big cities that are combatting persistent gun violence—are not risking eviction by possessing an unregistered gun in their homes.[5]

That it is not difficult to conjure situations in which the registration status of a gun would *not* affect the danger it poses to public safety likewise undermines the contention that failure to register a gun presents a per se threat. Mr. Hattix raised one at oral argument: An individual buys a gun and—having demonstrated that he satisfies the District's gun-registration requirements, *see* D.C. Code § 7-2502.03— registers this new gun. He then buys the exact same make and model of the original gun but, due to ignorance or laziness, fails to register the second gun. The registration status of the first gun does not make it any safer than the second gun. Or consider an individual who owns and registers a gun in another state before moving to the District. Upon arriving in the District, he is busy buying furniture and starting a new job, and it takes him a month to finally register his gun. His gun

---

[5] In his dissent, then-Judge Kavanaugh stated that the Supreme Court had already suggested in *United States v. Miller*, 307 U.S. 174 (1939), that the required registration of all lawfully possessed guns would run afoul of the Second Amendment. *Heller II*, 670 F.3d 1293.

posed no greater threat to public safety before it was locally registered than it did after it was registered.

Contrary to DCHA's argument, this view does not require "a landlord to wait until a tenant uses an unregistered weapon to commit an illegal act against a specific person." DCHA could also have evicted Mr. Hattix under the one-strike requirement by making an individualized showing that his possession of an unregistered firearm endangered the safety of his fellow residents. Evidence that Mr. Hattix failed to register his firearm because, for example, he could not satisfy the registration requirements—perhaps because he had a history of domestic violence—would support DCHA's contention that Mr. Hattix's unregistered firearm threatened the safety of fellow residents. *See* D.C. Code § 7-2502.03(12)(a); *see also United States v. Rahimi*, 602 U.S. 680, 690 (2024) (upholding against a constitutional challenge a law prohibiting individuals subject to a domestic violence restraining order from possessing a firearm).

But DCHA did not demonstrate an individualized threat here. In concluding otherwise, the reviewing judge relied on the housing manager's testimony that she was generally concerned about gun violence in the community, but general concern about guns tells us nothing about the particular threat posed by an individual. In fact, to the extent the housing manager said anything specific about

Mr. Hattix and his gun, her testimony cut the other way: she stated that she had no knowledge that Mr. Hattix had ever been involved in any gun-related activities on the premises, that she had never had a negative interaction with Mr. Hattix, and that he had never acted in a threatening manner towards her. On this record, DCHA has not established that Mr. Hattix's possession of an unregistered gun posed a per se or individualized threat to other residents' health, safety, or right to peaceful enjoyment.

## III.

For the foregoing reasons, the judgment of possession is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*