# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP2207 |
| COMPLETE TITLE: | Milwaukee City Housing Authority, Plaintiff-Respondent-Petitioner, v. Felton Cobb, Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 354 Wis. 2d 603, 849 N.W.2d 920
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 70

| | |
|---|---|
| OPINION FILED: | March 12, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 9, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Pedro A. Colon |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J. dissents. (Opinion filed) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *John J. Heinen*, assistant city attorney, with whom on the brief was *Grant F. Langley*, Milwaukee city attorney.

For the defendant-appellant, the cause was argued by *Jeffery R. Myer*, with whom on the brief was *April A.G. Hartman*, and *Legal Action of Wisconsin, Inc.*, Milwaukee.

An amicus curiae brief was filed by *Lisa L. Walker* and *Housing and Development Law Institute*, Washington, D.C., on behalf of the Housing and Development Law Institute.

An amicus curiae brief was filed by *Heiner Giese* and *Giese & Weden, S.C.*, Milwaukee, on behalf of Association of Southeastern Wisconsin, Inc., and Wisconsin Association of Housing Authorities.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP2207
(L.C. No. 2013SC20628)

STATE OF WISCONSIN      :      IN SUPREME COURT

Milwaukee City Housing Authority,

         Plaintiff-Respondent-Petitioner,

     v.

Felton Cobb,

         Defendant-Appellant.

**FILED**

**MAR 12, 2015**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1    ANNETTE KINGSLAND ZIEGLER, J.   This is a review of a published decision of the court of appeals, <u>Milwaukee City Housing Authority v. Cobb</u>, 2014 WI App 70, 354 Wis. 2d 603, 849 N.W.2d 920, which reversed the Milwaukee County circuit court's[1] judgment of eviction and restitution order against Felton Cobb ("Cobb").

¶2   Cobb lives in federally subsidized housing. His landlord, the Milwaukee City Housing Authority ("Housing Authority"), brought an eviction action against him because he

---

[1] The Honorable Pedro Colon presided.

violated the terms of his lease by engaging in "drug-related criminal activity"[2]——specifically, he smoked marijuana inside of his apartment. Cobb argues that he may not be evicted because he was not given an opportunity, required by Wis. Stat. § 704.17(2)(b) (2011-12),[3] to "take[] reasonable steps to remedy

_____

[2] The lease defines "drug-related criminal activity" to mean "the illegal manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute or use of a controlled substance[.]" Federal housing law uses a nearly identical definition: "[T]he term 'drug-related criminal activity' means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use, of a controlled substance (as defined in section 802 of title 21)." 42 U.S.C. § 1437d(l). Cobb does not dispute that smoking marijuana is engaging in drug-related criminal activity.

[3] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated. Wisconsin Stat. § 704.17(2)(b) provides in full:

> If a tenant under a lease for a term of one year or less, or a year-to-year tenant, commits waste or a material violation of s. 704.07 (3) or breaches any covenant or condition of the tenant's lease, other than for payment of rent, the tenant's tenancy is terminated if the landlord gives the tenant a notice requiring the tenant to remedy the default or vacate the premises on or before a date at least 5 days after the giving of the notice, and if the tenant fails to comply with such notice. A tenant is deemed to be complying with the notice if promptly upon receipt of such notice the tenant takes reasonable steps to remedy the default and proceeds with reasonable diligence, or if damages are adequate protection for the landlord and the tenant makes a bona fide and reasonable offer to pay the landlord all damages for the tenant's breach. If within one year from the giving of any such notice, the tenant again commits waste or breaches the same or any other covenant or condition of the tenant's lease, other than for payment of rent, the tenant's tenancy is terminated if the landlord, prior to the tenant's remedying the

(continued)

2

the default."[4]  Cobb does not challenge the Housing Authority's right to issue a notice of eviction in this case.  Rather, he argues that § 704.17(2)(b) required the notice of eviction to provide him with an opportunity to remedy, or "cure," his lease violation in order to avoid eviction.

¶3  The Housing Authority argues that it need not provide Cobb with an opportunity to take reasonable steps to remedy the default because federal housing law preempts Wis. Stat. § 704.17(2)(b) in this case.  Specifically, the Housing Authority argues that § 704.17(2)(b) is preempted by 42 U.S.C. § 1437d(l)(6)[5] such that no right to cure or remedy exists for a tenant who engaged in drug-related criminal activity.  The Housing Authority asserts that its preemption argument is supported by the fact that § 1437d(l)(6) requires public housing

---

waste or breach, gives the tenant notice to vacate on or before a date at least 14 days after the giving of the notice.

[4] Wisconsin Stat. § 704.17(2)(b) is sometimes known as a "right to cure" statute.

[5] Section 1437d(l)(6) of 42 U.S.C. states:

Each public housing agency shall utilize leases which . . . provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy[.]

3

authorities to use leases that state that engaging in drug-related criminal activity is grounds for eviction.

¶4 We hold that 42 U.S.C. § 1437d(l)(6) preempts the right-to-remedy provision of Wis. Stat. § 704.17(2)(b) when a public housing tenant is evicted for engaging in "drug-related criminal activity" within the meaning of 42 U.S.C. § 1437d(l).[6] Accordingly, we reverse the court of appeals' decision.

## I.  FACTUAL BACKGROUND

¶5 Cobb resides in Merrill Park, a publicly subsidized housing building operated by the Housing Authority. The Housing Authority is a public body, organized and chartered under Wis. Stat. § 66.1201 for the purpose of operating a low-income housing program under the United States Housing Act of 1937, 42 U.S.C. § 1437, et seq. The Housing Authority receives funding from the United States Department of Housing and Urban Development ("HUD"). The Housing Authority's funding from HUD is contingent on compliance with federal laws that govern public housing. See 42 U.S.C. § 1437d(j)(4)(A). One such law requires each public housing agency, including the Housing Authority, to provide in its lease that "any drug-related criminal activity on or off [the housing] premises, engaged in by a public housing tenant, . . . shall be cause for termination of tenancy." 42

---

[6] To be clear, we do not hold that Wis. Stat. § 704.17(2)(b)'s right to remedy is preempted under all circumstances. Our holding is limited to a circumstance in which drug-related criminal activity provides the basis for a public housing eviction action.

U.S.C. § 1437d(l)(6). Accordingly, Cobb's lease states that a tenant "shall not engage in . . . [a]ny drug-related or violent criminal activity, on or off the public housing development's property. Such activity shall be cause for termination of tenancy."

¶6 On June 5, 2013, Housing Authority public safety officer James Darrow ("Officer Darrow") was patrolling the hallways of Merrill Park when he smelled the scent of smoked marijuana on the fourth floor of the building. Officer Darrow checked several doors and determined that the marijuana odor was strongest outside the door of unit 414, where only Cobb resided. Officer Darrow knocked on Cobb's door, and Cobb opened the door about 12 inches. The smell of marijuana intensified in the hallway after the door was opened. When Officer Darrow inquired about the smell, Cobb initially stated that the odor was from bug spray, and minutes later he attributed the smell to his cooking. Cobb refused to allow Officer Darrow to enter the apartment. Officer Darrow did not observe Cobb using or possessing marijuana. Officer Darrow did not contact police to investigate further because in his experience, residents usually dispose of an illegal substance before police arrive. However, based on his interaction with Cobb and 14 years of experience as a public safety officer, Officer Darrow determined that Cobb was smoking marijuana.

¶7 On June 9, 2013, the Housing Authority notified Cobb that he violated the terms of his lease by engaging in illegal drug use on June 5. On June 26, 2013, the Housing Authority

provided Cobb with a 14-day notice of eviction for engaging in illegal drug use. This eviction notice did not provide Cobb with an opportunity to remedy or cure the lease violation. Cobb concedes that smoking marijuana is grounds for eviction because it is "drug-related criminal activity" as defined in his lease. Thus, our analysis focuses on whether Cobb has a right under Wis. Stat. § 704.17(2)(b) to remedy or cure the violation to avoid eviction, not whether a lease violation occurred in the first instance.

## II. PROCEDURAL POSTURE

¶8 On July 18, 2013, the Housing Authority filed an eviction action against Cobb in Milwaukee County circuit court. In his answer to the eviction complaint, Cobb alleged that he could not be evicted because he was not given a five-day opportunity, required by Wis. Stat. § 704.17(2)(b), to remedy the breach of the lease. Cobb also filed a motion to dismiss the eviction action, arguing that the facts alleged in the complaint were insufficient to prove that he smoked marijuana. On August 20, 2013, the circuit court held a hearing on Cobb's motion to dismiss the action to determine whether he in fact smoked marijuana. After hearing testimony from Officer Darrow and Cobb, the court found that Officer Darrow was more credible than Cobb and that the Housing Authority proved by a preponderance of the evidence that Cobb engaged in illegal drug activity in violation of his lease. The court scheduled a second hearing to consider whether Cobb had a five-day right

6

under § 704.17(2)(b) to remedy or cure the lease violation to avoid eviction.

¶9 On September 17, 2013, the circuit court conducted the second hearing. The circuit court held that Cobb had no right to remedy his lease violation because federal housing law preempted the right to remedy under Wis. Stat. § 704.17(2)(b). Relying on Department of Housing and Urban Development v. Rucker, 535 U.S. 125 (2002), and Scarborough v. Winn Residential L.L.P./Atlantic Terrace Apartments, 890 A.2d 249 (D.C. 2006), the court concluded that there "doesn't have to be a cure once criminal activity is found." Further, the court stated that "the odor of marijuana . . . can lead to reasonable suspicion of criminal activity." The court issued a restitution order and writ of eviction.

¶10 On October 1, 2013, Cobb filed a notice of appeal.[7] On May 28, 2014, the court of appeals reversed the circuit court's eviction judgment and restitution order. The court of appeals held that Cobb had to be given a five-day right to cure his lease violation because Wis. Stat. § 704.17(2)(b) was not preempted by federal law. The court of appeals thus held that

---

[7] Cobb also appealed the circuit court's denial of his motion for reconsideration. The motion argued that the circuit court should have applied the "clear and convincing evidence" burden of proof, rather than the "preponderance of the evidence" standard, when determining whether he smoked marijuana. The court of appeals determined that Cobb had not properly appealed this issue. Milwaukee City Housing Authority v. Cobb, 2014 WI App 70, ¶1 n.2, 354 Wis. 2d 603, 849 N.W.2d 920. This issue is not before us.

7

Cobb could not be evicted because the circuit court lacked competency over the eviction action. Specifically, the court of appeals concluded that Cobb could not be evicted because the Housing Authority had filed the eviction action without giving Cobb the five days to remedy his lease violation provided by § 704.17(2)(b).

¶11 On June 26, 2014, the Housing Authority filed a petition for review, which we granted on September 18, 2014. The sole issue before us is whether 42 U.S.C. § 1437d(l)(6) preempts the right-to-remedy provision of Wis. Stat. § 704.17(2)(b) when a public housing tenant is evicted for engaging in "drug-related criminal activity" within the meaning of 42 U.S.C. § 1437d(l).

### III. STANDARD OF REVIEW

¶12 The present case requires us to determine whether a federal law preempts a state statute. We determine whether federal law preempts state law independently of the determinations made by the circuit court and court of appeals.[8] Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Can Co., 150 Wis. 2d 479, 487, 441 N.W.2d 710 (1989). Our discussion of preemption will require us to interpret statutes. Statutory interpretation presents a question of law that we review de novo. Megal Dev. Corp. v. Shadof, 2005 WI 151, ¶8, 286 Wis. 2d 105, 705 N.W.2d 645. "[W]e have repeatedly held that

---

[8] We are not asked to defer to an agency's determination regarding preemption.

8

statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. (citations omitted). We will also interpret the parties' lease, which we do de novo. Walters v. Nat'l Properties, LLC, 2005 WI 87, ¶6, 282 Wis. 2d 176, 699 N.W.2d 71.

## IV. ANALYSIS

¶13 "Congress' power to pre-empt state law is derived from the Supremacy Clause of Art. VI of the Federal Constitution." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985) (citing Gibbons v. Ogden, 9 Wheat. 1 (1824)). Courts presume that state law is not preempted unless preemption was the "'clear and manifest purpose of Congress.'" Miller Brewing Co. v. Dep't of Indus., Labor & Human Relations, Equal Rights Div., 210 Wis. 2d 26, 35, 563 N.W.2d 460 (1997) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)) (quotation marks omitted). Federal law preempts state law under any of the following circumstances: (1) a federal law explicitly provides that it preempts state law; (2) the "scheme of federal regulation [is] 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it'"; (3) federal law and state law conflict such that compliance with both statutes

is a "'physical impossibility'"; or (4) state law "'stan[ds] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25, 31 (1996) (citations and quoted sources omitted). The Housing Authority relies on only the fourth form of preemption, arguing that in this case the right-to-remedy provision in Wis. Stat. § 704.17(2)(b) stands as an obstacle to the accomplishment and execution of Congress' goal and chosen method of providing drug-free public housing.

¶14 A state law stands as an obstacle to the accomplishment and execution of Congress' objectives if it conflicts with Congress' goal or chosen method for achieving that goal. See Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987) (citing Mich. Canners & Freezers Ass'n v. Agric. Mktg. & Bargaining Bd., 467 U.S. 461, 477 (1984)). A state law is preempted "only 'to the extent that it actually conflicts with federal law.'" Dalton v. Little Rock Family Planning Servs., 516 U.S. 474, 476 (1996) (citations omitted). To determine whether a state statute conflicts with a federal law, we first interpret the laws and then determine whether they conflict. Megal Dev. Corp., 286 Wis. 2d 105, ¶38 (citing Perez v. Campbell, 402 U.S. 637, 644 (1971)).

A. The Federal and State Provisions

¶15 We first turn to the purposes and objectives of the federal law at issue. "With drug dealers 'increasingly imposing a reign of terror on public and other federally assisted low-income housing tenants,' Congress passed the Anti-Drug Abuse Act

10

of 1988." Rucker, 535 U.S. at 127 (quoting § 5122, 102 Stat. 4301, 42 U.S.C. § 11901(3) (1994 ed.)). This Act states that:

> Each public housing agency shall utilize leases which . . . (6) provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.

42 U.S.C. § 1437d(l)(6). Section 1437d(l)(6) "unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests . . . ." Rucker, 535 U.S. at 130. "Thus, any drug-related activity engaged in by the specified persons is grounds for termination." Id. at 131. However, this "statute does not require the eviction of any tenant . . . . Instead, it entrusts that decision to the local public housing authorities . . . ." Id. at 133-34.

¶16 "Congress enacted the Anti-Drug Abuse Act of 1988, with the objective of reducing drug-related crime in public housing and ensuring 'public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs.'" Boston Hous. Auth. v. Garcia, 871 N.E.2d 1073, 1078 (Mass. 2007) (quoting Rucker, 535 U.S. at 134). See also Hous. Auth. of City of Norwalk v. Brown, 19 A.3d 252, 258-59 (Conn. App. 2011) ("Congress declared that th[e] purposes and objectives [of the Anti-Drug Abuse Act] are 'to provide public and other federally assisted low-income housing that is decent,

11

safe, and free from illegal drugs.'" (quoting Scarborough, 890 A.2d at 256)).

¶17 To achieve public housing that is decent, safe, and free from illegal drugs, Congress required public housing authorities to retain in their leases the power to evict tenants for any drug-related criminal activity.  See Scarborough, 890 A.2d at 256-57; Boston Hous. Auth., 871 N.E.2d at 1078.  By passing that requirement, "Congress enacted a straightforward practical method of dealing with a serious public safety problem."  City of S. San Francisco Hous. Auth. v. Guillory, 49 Cal. Rptr. 2d 367, 371 (Cal. App. Dep't Super. Ct. 1995).  At issue is whether Wis. Stat. § 704.17(2)(b) is in conflict with the accomplishment and execution of the objectives of the federal law.

¶18 The Wisconsin statute at issue provides:

> If a tenant . . . breaches any covenant or condition of the tenant's lease, . . . the tenant's tenancy is terminated if the landlord gives the tenant a notice requiring the tenant to remedy the default or vacate the premises on or before a date at least 5 days after the giving of the notice, and if the tenant fails to comply with such notice.

Wis. Stat. § 704.17(2)(b).  In its two briefs to this court, the Housing Authority questions whether the right-to-remedy provision in § 704.17(2)(b) can apply to drug-related criminal activity, even if this provision is not preempted.[9]  We question

---

[9] In response to questions posed by this court at oral argument, the Housing Authority argued that Wis. Stat. § 704.17(2)(b) does not apply to criminal activity, regardless of whether it is preempted.

whether the legislature intended for the right-to-remedy provision to apply to drug-related criminal activity or criminal activity in general. We also question whether past criminal activity is capable of being "remedied." See Brown, 19 A.3d at 256-59 (holding that Connecticut's statute providing a right to "remedy by repair" a lease violation did not apply to drug-related criminal activity). However, we need not resolve this issue today because we conclude that 42 U.S.C. § 1437d(l)(6) preempts the right-to-remedy provision of Wis. Stat. § 704.17(2)(b) when a public housing tenant is evicted for engaging in "drug-related criminal activity" within the meaning of 42 U.S.C. § 1437d(l).

## B. Whether Wis. Stat. § 704.17(2)(b) Conflicts with Federal Law

¶19 Cobb argues that Wis. Stat. § 704.17(2)(b) is not preempted. He argues that federal housing law does not conflict with § 704.17(2)(b). He contends that a right to remedy drug-related criminal activity is consistent with Congress' goal of providing drug-free public housing because a tenant must cease such activity in order to remedy it. He also contends that compliance with both federal law and § 704.17(2)(b) is possible and that the required termination notices under both laws are consistent. He identifies several statements of federal policy that, he contends, demonstrate that Congress did not intend preemption in the present case. Cobb further argues that his lease requires the Housing Authority to follow § 704.17(2)(b).

13

Specifically, Cobb concedes that illegal drug use may be a basis for termination, but he argues that the termination provisions under § 704.17(2)(b) must be followed and that those provisions give Cobb the right to cure his lease violation to avoid eviction.

¶20 Cobb relies on Housing Authority of Covington v. Turner, 295 S.W.3d 123 (Ky. Ct. App. 2009), a split decision from a Kentucky intermediate appellate court. In that case, a public housing tenant was evicted because her nephew, who stayed with her every other weekend, stored cocaine and drug paraphernalia in the room where he kept his belongings. Turner, 295 S.W.3d at 124. The tenant forwarded an "innocent tenant" defense and argued that the housing authority had not met its burden of proof. Specifically, the tenant testified that she was unaware that drugs were being kept in her apartment. Id. A provision in her lease mirrored the language of 42 U.S.C. § 1437d(l)(6) and stated that she could be evicted if any guest or member of her household engaged in drug-related criminal activity. Id. at 125. The tenant argued that she could not be evicted because she was not given an opportunity, required by a Kentucky statute, to remedy the lease violation. Id. at 124-25. The landlord argued that the statute was preempted, but the court unanimously concluded that the landlord had failed to adequately demonstrate that it had weighed the policy considerations behind the federal statute. Id. at 125, 128.

¶21 In a 2:1 decision, the Kentucky Court of Appeals concluded that the state statute was not preempted. Id. One

14

objective of the federal Anti-Drug Abuse Act of 1988 is to "discourage[e] illegal drug use on public housing premises." Id. at 127. Two judges concluded that a right to remedy illegal drug activity is consistent with that objective because a tenant who has "'been given the opportunity to remedy may be among the most likely of tenants to prevent the situation from recurring, thereby furthering the purposes of and objectives of the [federal] law.'" Id. A concurring judge refused to join the two-judge majority opinion concerning preemption. Id. at 128 (Moore, J., concurring). The judge ultimately concurred with the majority opinion's result, however, because the housing authority had failed to demonstrate that it weighed the policy considerations behind the federal statute. Id. at 129-30 (Moore, J., concurring).

¶22 Regarding preemption, the concurring judge concluded that "there is no doubt" that the state statute is preempted by the federal law. Id. at 128 (Moore, J., concurring). She reasoned that the right to remedy provided by the state statute is contrary to the Anti-Drug Abuse Act, which clearly allows tenants to be evicted for any drug-related criminal activity. Id. (Moore, J., concurring). The judge then listed several congressional findings to support the federal law's "'one-strike' policy," which was designed to eradicate illegal drug activity in public housing. Id. at 128-29 (Moore, J., concurring) (quoting 42 U.S.C. § 11901). The judge concluded that Congress' intent behind the Act was "to look out for the best interests of all residents in housing developments

15

receiving federal funding. All tenants should be able to feel secure in their homes and live in decent and safe housing, without the fear of drug-related crimes often associated with public housing." Id. at 128 (Moore, J., concurring). Cobb urges this court to adopt the reasoning of the Kentucky intermediate appellate court's two-judge majority opinion and conclude that the right to remedy is not preempted by federal law.

¶23 On the other hand, the Housing Authority argues federal housing law preempts the right to remedy a lease violation under Wis. Stat. § 704.17(2)(b) in the present case. The Housing Authority contends that it has the power under federal law to evict Cobb for engaging in any drug-related criminal activity. According to the Housing Authority, a right to remedy illegal drug activity would "severely frustrate" Congress' requirement that the Housing Authority retain the power to evict a tenant for engaging in such activity. The Housing Authority also argues that the goal of the Anti-Drug Abuse Act is to provide drug-free public housing. A right to remedy drug-related criminal activity, the Housing Authority argues, would frustrate Congress' goal of providing drug-free public housing. The Housing Authority relies heavily on Scarborough and Boston Housing Authority, in which the high courts of the District of Columbia and Massachusetts, respectively, held that federal housing law preempted statutes that provided defenses against eviction.

16

¶24 In Scarborough, a tenant was evicted for engaging in "'criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises . . . .'"[10]  Scarborough, 890 A.2d at 251, 252 n.1.  The tenant's criminal activity was possession of two unregistered firearms and unregistered ammunition in her apartment.[11]  Id. at 251-52 & n.2, 257.  The tenant argued that she could not be evicted because she was not given a 30-day opportunity, provided by a District of Columbia code, to cure the lease violation.  Id.

¶25 The District of Columbia Court of Appeals unanimously held that the right to cure was preempted because "application of the District's cure opportunity for criminal violations that threaten the safety or peace of other tenants would 'stand as an obstacle to the accomplishment and execution of the full

---

[10] Although the tenant in Scarborough was not evicted for drug activity, both she and Cobb received eviction notices for violating a lease term that mirrored 42 U.S.C. § 1437d(l)(6).  Scarborough v. Winn Residential L.L.P./Atl. Terrace Apartments, 890 A.2d 249, 255-56 (D.C. 2006).  Section 1437d(l)(6) requires a public housing lease to "provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, . . . shall be cause for termination of tenancy."  42 U.S.C. § 1437d(l)(6).  Thus, that section associates drug-related criminal activity with criminal activity that breaches the peace.

[11] The tenant's boyfriend had used a firearm to fatally shoot someone in her apartment.  Scarborough, 890 A.2d at 252.  However, the tenant was evicted for possessing unregistered firearms and ammunition, not for the shooting.  Id. at 251-52 & n.2.

17

purposes and objectives of Congress.'" Id. at 255. Congress intended to provide "'federally assisted low-income housing that is decent, safe, and free from illegal drugs.'" Id. at 256 (quoting 42 U.S.C. § 11901(1)). To that end, Congress required public housing authorities to use leases that provide that "[a]ny criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents" is grounds for eviction. Id. An opportunity to cure the criminal activity "would substitute for the landlord's discretion a mandatory second-strike opportunity for a tenant to stay eviction by discontinuing, or not repeating, the criminal act . . . ." Id. at 257. Therefore, a second-strike opportunity "would frustrate the purpose of an anticrime provision that permits eviction for 'any' criminal activity [that threatens the safety or peace of other tenants]." Id.

¶26 In Boston Housing Authority, a public housing authority sought to evict a tenant because two of her adult sons who lived with her were arrested for possessing marijuana. Boston Hous. Auth., 871 N.E.2d at 1075-76. Mirroring 42 U.S.C. § 1437d(l)(6), the tenant's lease stated that she could be evicted if any member of her household engaged in drug-related criminal activity. Id. at 1075. The tenant tried to defend against the eviction action by relying on a Massachusetts statute that provided an "innocent tenant" defense against eviction. Id. at 1075-76. She argued that she was an "innocent

18

tenant" because she was unaware of and could not control her sons' drug-related criminal activity. Id. at 1076.

¶27 The Massachusetts Supreme Judicial Court unanimously held that federal housing law preempted the state statute's "innocent tenant" defense. Id. at 1078. Congress enacted the Anti-Drug Abuse Act of 1988 to ensure that public housing would be "'decent, safe, and free from illegal drugs.'" Id. at 1078 (quoting Rucker, 535 U.S. at 134). To that end, Congress "required that housing authorities use clauses in their leases that permit the termination of a tenant's lease for crimes committed by household members, even where a tenant had no knowledge of and was not at fault for a household member's criminal activity." Id. Allowing the "innocent tenant" statutory defense to override a housing authority's discretion to evict "would run afoul of and substantially interfere with the congressional objective. It is therefore preempted." Id.

¶28 We hold that Wis. Stat. § 704.17(2)(b) is preempted in the present case because it "'stan[ds] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" See Barnett Bank, 517 U.S. at 31 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). We agree with the

19

reasoning of Scarborough and Boston Housing Authority.[12] A right to cure a lease violation that constitutes drug-related criminal activity conflicts with the federal Anti-Drug Abuse Act in two related respects. First, a right to cure past illegal drug activity is counter to Congress' goal of providing drug-free public housing. Second, a right to cure past illegal drug activity is in conflict with Congress' method of achieving that goal by allowing eviction of tenants who engage in drug-related criminal activity.

¶29 Permitting Cobb to avoid eviction by promising to cease his illegal drug use "would run afoul of and substantially interfere with the congressional objective" of providing drug-free public housing. See Boston Hous. Auth., 871 N.E.2d at 1078. Tenants will have an incentive not to use illegal drugs in the first instance if they can be evicted for, and given no right to cure, drug-related criminal activity. The potential to be evicted for any drug-related criminal activity, including a

---

[12] We disagree with Cobb that Boston Housing Authority is distinguishable because it did not involve a right-to-remedy statute. Courts have held that the Anti-Drug Abuse Act preempts a variety of state laws that allow tenants to avoid eviction for drug-related criminal activity. E.g., Ross v. Broadway Towers, Inc., 228 S.W.3d 113, 123-24 (Tenn. Ct. App. 2006) (holding that state "estoppel" defense against eviction is preempted); City of S. San Francisco Hous. Auth. v. Guillory, 49 Cal. Rptr. 2d 367, 371-72 (Cal. App. Dep't Super. Ct. 1995) (holding that state statute that created a "reasonable cause" standard for eviction is preempted); Hous. Auth. & Urban Redevelopment Agency of City of Atl. City v. Spratley, 743 A.2d 309, 313-14 (N.J. Super. Ct. App. Div. 1999) (holding that state statute that prohibits eviction of "blameless tenants" is preempted).

first offense, provides a powerful incentive to avoid such activity. See Rucker, 535 U.S. at 134 (citing Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 14 (1991)) ("Strict liability maximizes deterrence . . . ."). By contrast, if a landlord were required to give a "free pass" on a tenant's first drug offense, tenants would have little incentive not to use illegal drugs because if they are caught, they can just promise not to do it again. For the other tenants of the building, this after-the-fact promise is far from a remedy for completed criminal activity and "'stan[ds] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" See Barnett Bank, 517 U.S. at 31 (quoting Hines, 312 U.S. at 67). The objective of Congress is to provide safe, drug-free public housing, not to provide housing that allows criminal drug activity so long as the offender promises not to do it again.

¶30 Cobb's argument to the contrary is unpersuasive. Cobb argues that an opportunity to remedy a first-offense drug violation is consistent with Congress' goal of drug-free public housing, because a tenant remedies a drug offense by ceasing to engage in drug-related activity. Simply stated, Cobb suggests that a tenant helps to achieve drug-free housing by ceasing drug-related activity. The Kentucky Court of Appeals' two-judge majority opinion in Turner used similar reasoning in holding that its right-to-remedy statute was not preempted. Turner, 295 S.W.3d at 127. This line of reasoning is flawed because it ignores the fact that a tenant who ceases drug-related activity has already been caught engaging in such illegal activity.

21

Congress did not merely intend to prevent repeat drug offenses in public housing. Congress intended to eliminate all drug-related criminal activity in public housing, which includes first-time or repeat drug offenses. See 42 U.S.C. § 11901(1) (expressing intent to provide public housing that is "free from illegal drugs") (emphasis added). An opportunity to avoid eviction for a first-offense drug violation conflicts with that congressional intent.[13]

¶31 In addition to conflicting with Congress' goal of providing drug-free public housing, a right to remedy drug-related criminal activity conflicts with Congress' chosen method of achieving that goal: allowing public housing authorities to evict tenants for engaging in any drug-related criminal activity. This additional conflict militates in favor of preemption. See Int'l Paper Co., 479 U.S. at 494 (citation omitted) ("A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach [Congress'] goal.").

¶32 The Anti-Drug Abuse Act "unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests . . . ." Rucker, 535 U.S. at 130.

---

[13] In fact, the right to cure statute could, depending on the circumstances, allow a tenant to engage in drug-related criminal activity multiple times. Thus, the right to cure statute frustrates Congress' goal of providing drug-free public housing.

22

A right to remedy drug-related criminal activity "would substitute for the landlord's discretion a mandatory second-strike opportunity for a tenant to stay eviction by discontinuing, or not repeating, the criminal act . . . ." Scarborough, 890 A.2d at 257. If the Housing Authority were required to provide a tenant with an opportunity to remedy a first-offense drug violation, the Housing Authority "would thus have lost the ability to terminate a tenant who violated her lease by . . . engaging in drug related criminal activity, an ability Congress intends to preserve for housing authorities . . . ." Boston Hous. Auth., 871 N.E.2d at 1078. The right to cure under state law removes the Housing Authority's discretion to evict afforded under federal law and instead requires that the Housing Authority allow a tenant a second chance. Simply stated, Wis. Stat. § 704.17(2)(b)'s right to cure undermines the federal law's intent to vest the power to evict in the Housing Authority. Section 704.17(2)(b)'s right to cure is thus preempted in the present case. See id.

¶33 Cobb argues that the right to cure has a "minimal" effect on a public housing authority's power to evict tenants who engage in drug-related criminal activity. For support, he contends that a tenant who receives a notice to remedy-or-vacate must either cease the lease-breaching behavior within five days or vacate the premises. He further contends that a tenant may be evicted for a second breach of the lease without being given an opportunity to cure the second breach. Cobb's argument appears to mean that the right to cure is not preempted because

23

it does not substantially interfere with Congress' objectives. See Barnett Bank, 517 U.S. at 33-34 (explaining that a state statute is not preempted if it "does not prevent or significantly interfere with" the exercise of federal power). We disagree. A right to remedy drug-related criminal activity would significantly interfere with Congress' objectives because it would allow a tenant to avoid an eviction and run counter to the objective of providing drug-free public housing. See Scarborough, 890 A.2d at 257-58 (holding that a tenant's right to avoid eviction by curing criminal activity "would stand as a pronounced obstacle to" and "undermine" congressional intent); Boston Hous. Auth., 871 N.E.2d at 1078 (holding that an "innocent tenant" defense against eviction for drug-related activity "would run afoul of and substantially interfere with" congressional intent).

¶34 To highlight the significance of allowing users of illegal drugs to avoid eviction, we note the findings that Congress made when adopting the Anti-Drug Abuse Act. "[P]ublic and other federally assisted low-income housing in many areas suffers from rampant drug-related or violent crime." 42 U.S.C. § 11901(2). "[D]rug dealers are increasingly imposing a reign of terror on public and other federally assisted low-income housing tenants." Id. at § 11901(3). "[T]he increase in drug-related and violent crime not only leads to murders, muggings, and other forms of violence against tenants, but also to a deterioration of the physical environment that requires substantial government expenditures." Id. at § 11901(4).

24

Congress' efforts to eliminate those serious problems would be significantly obstructed if a tenant who engages in drug-related criminal activity could avoid eviction by exercising a right to cure past illegal drug activity.

¶35 Cobb argues that Wis. Stat. § 704.17(2)(b) does not conflict with federal law because the Housing Authority could have complied with both laws. Cobb's reasoning is that federal housing law allows, but does not require, the Housing Authority to evict him. See Rucker, 535 U.S. at 133-34. Thus, Cobb argues, the Housing Authority would not violate federal law by giving him an opportunity to remedy his lease violation. This argument is unpersuasive because it conflates two separate grounds for preemption. See supra ¶13. A state law is preempted if it stands as an obstacle to the accomplishment and execution of Congress' objectives, even if compliance with both state and federal law is possible. Barnett Bank, 517 U.S. at 31; Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 154-56 (1982). Moreover, while federal law does not require eviction, Cobb recognizes that it certainly provides for eviction. 42 U.S.C. § 1437d(l)(6). As Cobb also recognizes, federal law endows the Housing Authority with the discretion to promptly evict a tenant who engages in drug-related criminal activity. Id. at § 1437d(l)(4)(A)(ii). As we discussed earlier, the right to cure is preempted partly because it thwarts that discretion by obliging a public housing authority to provide an opportunity to cure past drug-related criminal

25

activity regardless of how heinous the offense was.  See supra ¶¶31-32.

¶36 Cobb further contends that the termination notice requirements under Wis. Stat. § 704.17(2)(b) and federal law are not in conflict.  Cobb argues that § 704.17(2)(b) requires a termination notice of five days, which is well within the applicable federal requirement of any reasonable length of time not to exceed 30 days.[14]  See 42 U.S.C. § 1437d(l)(4)(A)(ii). However, even if those time limits do not necessarily conflict, § 704.17(2)(b)'s  right to remedy conflicts with federal law in the present case for the reasons already stated.

¶37  For the foregoing reasons, we conclude that 42 U.S.C. § 1437d(l)(6)  preempts  the  right-to-remedy  provision of Wis. Stat. § 704.17(2)(b) when a public housing tenant is evicted for engaging in "drug-related criminal activity" within the meaning of 42 U.S.C. § 1437d(l).

C. Cobb's Remaining Arguments

---

[14] Cobb's argument relies on Meier v. Smith, 254 Wis. 70, 35 N.W.2d 452 (1948), in which this court held that a Wisconsin statute requiring six months' notice prior to eviction did not conflict with a federal statute requiring at least 60 days' notice.  We reasoned that the federal statute required a minimum amount of notice and the Wisconsin statute did not go below that minimum.  Meier, 254 Wis. at 74-75.  We also reasoned that the Wisconsin statute "does not take any right from the landlord to possession of property granted by [federal law]."  Id. at 79. Meier thus hurts Cobb's position.  A right to remedy his lease violation would deprive the Housing Authority of its right under 42 U.S.C. § 1437d(l)(6) to evict Cobb and take possession of his housing unit.

¶38 Cobb makes several arguments in addition to his argument that the right to remedy does not conflict with 42 U.S.C. § 1437d(l)(6).  Although we have already determined that the right to remedy conflicts with § 1437d(l)(6) in the present case, we nevertheless briefly address these remaining arguments.

¶39 Cobb argues that his lease provides a right to remedy his drug use.  He relies on section 9.C. of his lease, which requires the Housing Authority to provide termination notices in accordance with Wis. Stat. § 704.17(2).  Section 9.C. has several express exceptions, including section 9.C.2., which states that the Housing Authority "shall give written notice of termination of the Lease as of:  . . . 2. A reasonable time commensurate with the exigencies of the situation (not to exceed 30 days) in the case of . . . any drug-related criminal activity . . . ."  Cobb argues that section 9.C.2. does not eliminate the right to remedy but rather extends the five-day notice period under § 704.17(2) to up to 30 days.  However, other lease provisions belie Cobb's argument.  Section 6.J. of the lease states that the Housing Authority will provide one "written warning prior to a proposed termination of tenancy, except . . . in the case of a violation of 5.Q. or a termination per 9.C.2."  Section 5.Q., which uses language that closely follows 42 U.S.C. § 1437d(l)(6), prohibits a tenant from engaging in "[a]ny activity that threatens the health, safety or right to peaceful enjoyment of the premises . . . " or "[a]ny drug-related or violent criminal activity. . . .  Such activity shall be cause for termination of tenancy."  Thus, sections 6.J.

27

and 5.Q. plainly state that a written warning——i.e., a right to remedy——does not apply to drug-related criminal activity.

¶40  Cobb relies on several statements of federal policy for the proposition that the right to remedy is not preempted. We find these arguments unpersuasive.  Cobb points to the preamble to a HUD rule, which amended HUD regulations to strengthen public housing authorities' ability to evict tenants who engaged in illegal drug use or other criminal activity. Screening and Eviction for Drug Abuse and Other Criminal Activity, 66 Fed. Reg. 28776-01 (May 24, 2001).  The preamble states that "[t]his final rule does not . . . preempt State law within the meaning of Executive Order 13132."  Id. at 28791. However, that statement sheds no light on whether 42 U.S.C. § 1437d(l)(6) preempts state law.[15]

¶41  Cobb also relies on a HUD regulation that states that "a notice to vacate which is required by State or local law may be combined with, or run concurrently with, a notice of lease termination   under . . . this   section."   24   C.F.R. § 966.4(l)(3)(iii).  However, this regulation does not indicate

_____

[15] An earlier, proposed version of this rule stated that federal housing policy created a "one strike" policy with respect to illegal drug use.  One-Strike Screening and Eviction for Drug Abuse and Other Criminal Activity, 64 Fed. Reg. 40262-01 (proposed July 23, 1999).  The final version of this rule does not use the phrase "one strike."  Cobb argues that HUD's omission of that phrase from the final version of this rule further indicates that HUD did not intend for this rule to preempt state law.  However, 42 U.S.C. § 1437d(l)(6) preempts state law regardless of whether this HUD rule does as well.

28

whether a state law may require a public housing authority to provide an opportunity to remedy drug-related criminal activity.

¶42 Cobb relies on a letter issued in response to Rucker by then-HUD Secretary Mel Martinez, which states that "[e]viction should be the last option explored . . . ." Letter from Mel Martinez, HUD Secretary, to Public Housing Directors (Apr. 16, 2002). However, this letter does not shed any light on whether a statutory right to cure may limit a public housing authority's power to evict once it explores that option. See Boston Hous. Auth., 871 N.E.2d at 1078-79 & n.14.

¶43 Finally, Cobb relies on a HUD guidance that provides, "State or local law governing eviction procedures may give tenants procedural rights in addition to those provided by federal law. Tenants may rely on those state or local laws so long as they have not been pre-empted by federal law." HUD Directive No. 96-16, Notice PIH 96-16(HA) (April 12, 1996); see also 24 C.F.R. § 247.6(c). Cobb argues that Wis. Stat. § 704.17(2)(b)'s right to cure is a procedural right allowed under that HUD guidance. However, that HUD guidance expressly states that local or state law cannot provide rights that are preempted by federal law. We have already determined that federal law preempts the right to cure in the present case. See also Scarborough, 890 A.2d at 258 (holding that "[a] 'procedural' right to a second chance to refrain from criminal activity endangering other tenants would conflict fundamentally with" federal housing law).

29

¶44 In sum, for the reasons previously set forth as well as those briefly addressed above, we reject Cobb's additional arguments that Wis. Stat. § 704.17(2)(b)'s right to cure is not preempted in the present case.

## V. CONCLUSION

¶45 We hold that 42 U.S.C. § 1437d(l)(6) preempts the right-to-remedy provision of Wis. Stat. § 704.17(2)(b) when a public housing tenant is evicted for engaging in "drug-related criminal activity" within the meaning of 42 U.S.C. § 1437d(l). Accordingly, we reverse the court of appeals' decision.

*By the Court.*—The decision of the court of appeals is reversed.

¶46 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* The Milwaukee City Housing Authority is attempting to evict Felton Cobb, a disabled 62-year-old public housing tenant, because Cobb smoked marijuana in his apartment. In deciding whether to effectuate this eviction, the court must be mindful of two important, sometimes conflicting, interests.

¶47 On the one hand, the goal of public and subsidized housing programs is to provide low-income individuals with "housing that is decent, safe, and free from illegal drugs."[1] Eliminating drug-related criminal activity is a critical element of pursuing that goal.

¶48 On the other hand, "federal law does not provide for mandatory summary eviction [for drug-related criminal activity] but vests in local authorities the discretion" to evict.[2] In exercising such discretion, local housing authorities are "to be guided by compassion and common sense."[3]

¶49 Thus, public housing evictions based on drug-related criminal activity require the court to engage in a difficult balancing act. "[T]he Congressional intent is not to be overly harsh on tenants . . . but to look out for the best interests of

---

[1] Dep't of Housing & Urban Dev. v. Rucker, 535 U.S. 125, 134 (2002) (citation omitted).

[2] Housing Auth. of Covington v. Turner, 295 S.W.3d 123, 126 (Ky. Ct. App. 2009).

[3] This quote comes from a letter issued to local housing authorities by Mel Martinez, the former Secretary of the United States Department of Housing and Urban Development. The letter, dated April 16, 2002, was filed as an exhibit in support of Cobb's motion to dismiss.

all residents in housing developments receiving federal funding."[4]

¶50 I write separately to explain how I would balance the significant interests at stake in the present case.

¶51 The instant case was briefed and argued as a preemption case. Cobb asserts a right under a state law that the Housing Authority claims is preempted. The majority opinion rules in favor of the Housing Authority. I would rule in favor of Cobb.

¶52 Even assuming that the state law at issue is preempted (despite the presumption against preemption), I conclude that Cobb's eviction is contrary to federal law. Federal law confers on the Housing Authority the discretion to evict Cobb under the circumstances presented in the instant case; it does not mandate that the Housing Authority evict everyone who engages in drug-related criminal activity.

¶53 Because the record before the court contains no evidence that the Housing Authority exercised discretion in evicting Cobb and because the parties did not argue the discretion issue, I would remand the cause to the circuit court to decide whether Cobb's eviction was a legitimate exercise of the Housing Authority's discretion to evict on the basis of drug-related criminal activity.

¶54 I briefly state the relevant facts.

---

[4] <u>Turner</u>, 295 S.W.3d at 128 (Moore, J., concurring).

¶55  The Housing Authority filed an eviction action against Cobb based on Cobb's violation of a lease provision prohibiting drug-related criminal activity.  The Housing Authority determined that Cobb was engaged in drug-related criminal activity after a public safety officer reported smelling marijuana coming from Cobb's apartment and reported that the smell became stronger when Cobb opened his door.

¶56  It is undisputed that Cobb did not receive notice from the Housing Authority providing Cobb with five days to either remedy the lease violation or vacate the premises.  Such notice is required under Wis. Stat. § 704.17(2)(b) (2011-12), which I refer to as the five-day notice statute.[5]

¶57 Cobb contends that he cannot be evicted without receiving the notice required by the five-day notice statute. The Housing Authority disagrees, arguing that the five-day notice statute is preempted insofar as it requires local housing authorities to give tenants an opportunity to remedy drug-related criminal activity.

¶58 The Housing Authority's preemption argument is premised on an alleged conflict between 42 U.S.C. § 1437d(l)(6) and the five-day notice statute.

¶59 42 U.S.C. § 1437d(l)(6) requires local housing authorities to utilize leases that provide that "any drug-related criminal activity . . . shall be cause for termination of tenancy."  This provision was enacted as part of a larger

_____

[5] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

3

effort to "provide public and other federally assisted low-income housing that is decent, safe, and free from illegal drugs."[6]

¶60 Importantly, 42 U.S.C. § 1437d(l)(6) does not mandate eviction when a local housing authority determines that a tenant is engaged in drug-related criminal activity. Instead, as the Housing Authority acknowledges in the instant case, 42 U.S.C. § 1437d(l)(6) gives local housing authorities discretion to evict on the basis of drug-related criminal activity.

¶61 The Housing Authority maintains that the five-day notice statute is at odds with its discretion to evict on the basis of drug-related criminal activity. Requiring the Housing Authority to give tenants an opportunity to remedy drug-related criminal activity, the Housing Authority reasons, would enable tenants to avoid eviction regardless of whether a discretionary determination has been made that eviction is appropriate under the circumstances.

¶62 For purposes of this dissent, I assume that 42 U.S.C. § 1437d(l)(6) preempts the five-day notice statute. I therefore assume that the Housing Authority has discretion to evict Cobb for drug-related criminal activity without giving him an opportunity to remedy his lease violation.

¶63 I conclude, however, that the record before the court contains no evidence that the Housing Authority exercised

---

[6] Rucker, 535 U.S. at 134 (citation omitted).

4

discretion in the present case. On the contrary, Cobb's eviction appears to be "a blind application of the law."[7]

¶64 Under United States Supreme Court precedent and federal regulations, blind application of the law does not constitute a legitimate exercise of the discretion conferred by 42 U.S.C. § 1437d(l)(6). Thus, in my view, Cobb's eviction is contrary to the federal law that the Housing Authority insists is controlling.

¶65 I briefly review the federal regulation and the United States Supreme Court opinion that inform my position.

¶66 The federal regulation set forth at 24 C.F.R. § 966.4(l)(5)(vii)(B) clarifies that although drug-related criminal activity "shall be cause for termination of tenancy,"[8] eviction will not always be necessary or appropriate when drug-related criminal activity is discovered. Rather, local housing authorities may consider the circumstances of the particular case to decide whether eviction will further the objectives underlying 42 U.S.C. § 1437d(l)(6).

¶67 The relevant text of this federal regulation is as follows:

> [Local housing authorities] may consider all circumstances relevant to a particular case such as the seriousness of the offending action, the extent of participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending activity and the extent to which the leaseholder has shown

---

[7] See Turner, 295 S.W.3d at 129 (Moore, J., concurring).

[8] 42 U.S.C. § 1437d(l)(6).

personal responsibility and has taken all reasonable steps to prevent or mitigate the offending action.[9]

¶68 In Department of Housing & Urban Development v. Rucker, 535 U.S. 125 (2002), the United States Supreme Court discussed and applied both 42 U.S.C. § 1437d(l)(6) and 24 C.F.R. § 966.4(l)(5)(vii)(B). The Court stated that 42 U.S.C. § 1437d(l)(6) "does not require the eviction of any tenant" who engages in drug-related criminal activity.[10] Rather, the Court explained, the federal law

> entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from "rampant drug-related or violent crime," "the seriousness of the offending action," and "the extent to which the leaseholder has . . . taken all reasonable steps to prevent or mitigate the offending action."[11]

¶69 I agree with the concurring opinion of Judge Moore in Housing Authority of Covington v. Turner, 295 S.W.3d 123, 129 (Ky. Ct. App. 2009), that "[w]hile much discretion rests with the local Housing Authority, Rucker does require some thresholds to be met or facts to be taken into consideration for the eviction of a tenant under 42 U.S.C. § 1437d(l)(6)." As Judge Moore so aptly put it: "[D]iscretion must be exercised, rather than a blind application of the law[,] because 42 U.S.C. § 1437d(l)(6) does not require evictions."[12]

---

[9] 24 C.F.R. § 966.4(l)(5)(vii)(B).

[10] Rucker, 535 U.S. at 133-34.

[11] Id. (citations omitted).

[12] Turner, 295 S.W.3d at 129 (Moore, J., concurring).

6

¶70 The record before the court contains no evidence that the Housing Authority exercised discretion in deciding to evict Cobb. In other words, no evidence was presented to show "that the Housing Authority weighed anything in its decision to evict" Cobb.[13]

¶71 The eviction action was filed shortly after a public safety officer determined that Cobb was smoking marijuana in his apartment. There is no evidence that any further investigation took place in the interim. There is no evidence that the particular housing project in which Cobb resides "suffers from 'rampant drug-related or violent crime.'"[14] There is no evidence that Cobb has previously engaged in drug-related criminal activity or any other lease violations. Finally, with regard to "the seriousness of the offending action,"[15] the circuit court observed that the drug-related criminal activity Cobb engaged in "is the lowest of criminal activities."

¶72 I conclude, as did Judge Moore, that "reliance on 42 U.S.C. § 1437d(l)(6) alone is insufficient where the local housing authority has not made a showing of evidence that it weighed the policy considerations behind evictions in drug-related cases in public housing."[16] In the present case, the Housing Authority has made no such showing.

---

[13] Id.

[14] Rucker, 535 U.S. at 133-34.

[15] Id.

[16] Turner, 295 S.W.3d at 129 (Moore, J., concurring)

7

¶73   For the reasons set forth, I dissent.